# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER ORDUNO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>M.E. SPEARMAN,<br><br>　　　　Respondent. | Case No. 1:16-cv-01180-EPG-HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO CLOSE CASE, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Petitioner Walter Orduno is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts that he was improperly convicted of three separate counts of resisting an executive officer under California Penal Code section 69.

For the reasons discussed herein, the Court finds denial of the petition for writ of habeas corpus is warranted.

**I.**

**BACKGROUND**

On January 22, 2014, Petitioner was convicted by a jury in the Kern County Superior Court of: child abuse (lesser-included offense to count 1); assault (lesser-included offense to count 2); evading a peace officer: reckless driving (count 3); evading a peace officer: driving a vehicle in opposite direction of traffic (count 4); three counts of assault on a peace officer with a

deadly weapon (counts 5–7); three counts of resisting an executive officer by the use of force or violence (counts 8–10); transportation of methamphetamine (count 11); and obstructing a peace officer (count 12). (2 CT[1] 504–27). Petitioner was sentenced to an imprisonment term of thirteen years. People v. Orduno, No. F068962, 2015 WL 8053240, at *1–2 (Cal. Ct. App. Dec. 7, 2015). On December 7, 2015, the California Court of Appeal, Fifth Appellate District reversed Petitioner's conviction on count 11, directed the trial court to stay the sentence on count 4, and remanded the case for resentencing. The judgment was otherwise affirmed. Id. at *5. The California Supreme Court denied Petitioner's petition for review on February 17, 2016. (LDs[2] 18, 19).

On August 10, 2016, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). Respondent has filed an answer to the petition. (ECF No. 12). The parties have consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 11, 16).

## II.

## STATEMENT OF FACTS[3]

> The chase began at 2:57 a.m. on July 21, 2013, when Bakersfield Police Officers Robert "Joe" Woods and Jess Beagley saw a white Ford Crown Victoria, driven by Orduno, speeding while traveling eastbound on Stockdale Highway. Officer Woods gave chase and, after hitting a speed of 100 miles per hour, finally caught up with Orduno as he turned right onto South Real Road. After making the turn, Orduno pulled over to the curb. Israel Lopez, who was sitting in the Crown Victoria's front passenger seat, got out of the car. The officers activated the overhead flashing lights and siren on their unmarked patrol car, but Orduno sped away, heading southbound on South Real Road. Upon crossing Elcia Drive, he slowed down. Officer Beagley saw a passenger in the rear seat, Norma Hernandez–Alvarado, remove a baby from a car seat, open the back passenger-side door, and stick out her foot. Orduno started moving the car forward, and Hernandez–Alvarado, who was holding the baby, fell to the ground outside the car. Orduno quickly sped away. Officer Woods again gave chase, while Officer Beagley stayed behind to attend to Lopez and Hernandez–Alvarado.
>
> At this point, Officer Woods activated a "Code 3 response," meaning that all the patrol car's lights and sirens were in operation. Other officers in marked police cars, with lights and sirens activated, also joined the chase as Orduno drove eastbound on State Route 58. Orduno drove at speeds of up to 100 miles per hour, running several red lights along the way. He finally exited on Union Avenue, but,

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on January 17, 2017. (ECF No. 14).
[2] "LD" refers to the documents lodged by Respondent on January 17, 2017. (ECF No. 14).
[3] The Court relies on the California Court of Appeal's December 7, 2015 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

at the top of the exit ramp, he turned around and drove the wrong way down the same ramp, toward the patrol cars that were pursuing him. He accelerated directly at a patrol car driven by Officer Jason Felgenhauer, with Officer Robert Pair in the passenger seat. Officer Felgenhauer had to "violently maneuver" his patrol car to avoid a head-on collision, ending up on the shoulder of the road. Orduno then drove directly at a patrol car driven by Officer Martin Heredia, who testified that Orduno changed lanes to do so; Officer Heredia also had to pull to the side to avoid being hit. Orduno continued driving in a westbound direction on eastbound State Route 58, with multiple patrol cars in pursuit. A short time later, the Crown Victoria veered toward State Route 58's center median and stopped against the curb. By the time the officers reached the car, Orduno had run away. Officer Woods searched the car and found a small plastic baggie containing crystal methamphetamine. The parties later stipulated that the methamphetamine constituted a usable amount.

Other Bakersfield police officers were dispatched to the area to set up a perimeter, including Officers Travis Brewer, Steven Glenn, and Thomas Hernandez, who brought his police dog, Kane. An onlooker told the officers he saw Orduno run toward Haybert Court. Kane alerted to a human scent at 215 Haybert Court. Officer Hernandez commanded Kane to search the backyard and momentarily Orduno called out, "[Y]our dog has me." Kane had found Orduno hiding under a table and had bitten his right shoulder and grabbed his shirt. At Officer Hernandez's direction, Orduno crawled out and lay on his stomach. However, once Officer Hernandez took Kane away, Orduno tried to get back under the table. Officers Brewer and Glenn attempted to stop him but he struggled violently and the officers were unable to control him. Orduno was able to reach into his pocket, where Officer Glenn had felt a knife. Officer Christopher Moore came into the backyard to assist the officers. He saw Orduno "violently resisting" the officers who were trying to handcuff him. However, as he tried to help push Orduno down to the ground, Orduno bucked forcefully, causing Officer Moore to be flung off his back. Officer Nathan Anderberg came to help and deployed his Taser. Orduno was then taken into custody. A folding buck knife was discovered in his pants pocket during a subsequent search.

Orduno, 2015 WL 8053240, at *1–2.

## III.

## DISCUSSION

**A. Standard of Review**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kern County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (*en banc*). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th

Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

### B. Review of Claims

Petitioner asserts that he was improperly convicted of three separate counts of resisting an executive officer under California Penal Code section 69. Petitioner argues that resistance to multiple officers during a single encounter should result in a single conviction. (ECF No. 1 at 3, 15–18).[4] Respondent argues that this claim is not cognizable on federal habeas review and that the state court's denial was not contrary to any clearly established Supreme Court precedent. (ECF No. 16 at 10–11).

This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim was also raised in the petition for review, which the California Supreme Court summarily denied. (LDs 18, 19). As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying this claim, the California Court of Appeal stated:

> ***I. Orduno was properly convicted on three separate counts under section 69***
> Orduno was charged with and convicted of three counts of resisting an executive officer by means of force or violence in violation of section 69. Specifically, he was charged in count 8 with resisting Officer Travis Brewer, in count 9 with resisting Officer Christopher Moore, and in count 10 with resisting Officer Steven Glenn. He was convicted of all three counts and sentenced to a consecutive eight-month prison term for each count.
>
> Orduno now contends his three section 69 convictions should be consolidated into a single conviction because resisting multiple executive officers during a single incident constitutes a single violation of the statute. The People respond that Orduno was properly convicted of three separate violations of section 69, notwithstanding the fact that the violations arose from a single incident, because

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

Orduno used force and violence against three different officers. We agree Orduno was properly convicted of three counts of violating section 69.

### A. Factual background

The section 69 charges and convictions were based on the violent struggle between Orduno and Officers Brewer, Moore, and Glenn, as the officers attempted to arrest Orduno upon finding him in a residential backyard. A police dog, Kane, had detected Orduno hiding under a table in the backyard. After Kane was taken away, Orduno attempted to get back to his hiding spot under the table. The officers tried to stop him, aiming to get him face down on the ground and to handcuff his arms behind his back. Officer Brewer testified that he grabbed Orduno's right arm and attempted to place it in a "control hold," but was unable to do so as Orduno was "violently struggling" and trying to stand up and pull away. Officer Brewer tried lowering his knee onto Orduno's shoulder blade to force his upper body to the ground, to no avail.

Officer Steven Glenn also testified about the officers' struggle with Orduno. He said he took hold of Orduno's left arm but had difficulty maintaining his grasp because Orduno was resisting violently. When Officer Glenn put his knee down on Orduno's back, Orduno knocked him off and attempted to turn over, at which point Officer Glenn lost control of Orduno's left arm. Orduno shoved his hand into his left-front pants pocket, where Officer Glen could feel Orduno grasping a knife.

Officer Christopher Moore came to assist Officers Brewer and Glenn in the backyard. It was a "really tight, a tight, confined space" that was covered with junk. "It was dark back there," but Officer Moore saw "a suspect on the ground violently resisting" Officers Brewer and Glenn. He described what happened next:

> "As my two partners were at his upper body trying to press his back into the ground—or his chest into the ground, I went up and tried to—I got on his back to press him down on the ground and we weren't getting the desired effect. He wasn't going to the ground. He was still trying to buck up and get out from under us. [¶] And so I delivered a distraction elbow strike to his back, and it didn't have an effect on him. So I delivered another one, and at that point he—he threw himself up so hard that I ended up flying off of him and out of the little confined space area. And as I said, there's a bunch of junk in that yard. I couldn't get back into the—into the fight, so to say, to help get my—or help my officers get him into custody."

It was only when Officer Anderberg arrived and used his Taser that Orduno was handcuffed and taken into custody.

### B. Analysis

The issue is whether Orduno's attacks on Officers Brewer, Glenn, and Moore constitute a single violation or separate violations of section 69. We review de novo purely legal questions such as the interpretation and application of a statute. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694.) We agree with the People that Orduno was properly convicted of three separate violations of section 69.
Section 69 provides:

> "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon

7

such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

The California Supreme Court has explained that section 69 "sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is by resisting by force or violence an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814; *People v. Smith* (2013) 57 Cal.4th 232, 240–241.) Orduno's convictions are for resisting an officer by means of force or violence in the performance of his duty.

*People v. Hairston* (2009) 174 Cal.App.4th 231, which Orduno cites, defeats Orduno's argument. In *Hairston,* the defendant was convicted of three counts of violating section 148, subdivision (a)(1), which makes it a misdemeanor to resist, delay, or obstruct a peace officer. The defendant ran away from three officers who had accosted him at different times and locations during the same search. He challenged his convictions on the basis that his actions constituted one violation of the statute. The court noted that, "[u]nless the Legislature says otherwise, if a defendant commits a single criminal act that affects multiple victims, he can be convicted of multiple counts of violating the same statute only if the gravamen of the offense 'is centrally an "act of violence against the person." ' " (*Hairston, supra,* at p. 238.) Contrary to Orduno's assertion, the gravamen of his section 69 offenses is force and violence against the persons of the individual officers. (See *Brooks v. Superior Court of Los Angeles County* (1966) 239 Cal.App.2d 538, 541 [gravamen of section 69 offense is "threats, force and violence"]; CALCRIM No. 2652.) Under *Hairston,* multiple convictions for multiple victims would be proper even if Orduno had committed only one act.

Further, Orduno committed multiple acts. In *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, our Supreme Court stated that "a charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once." (*Id.* at p. 349.) Thus, for example, where a person kills several people while driving intoxicated, he may properly be convicted for multiple violations of the vehicular manslaughter statute but not for multiple violations of the statute prohibiting drunk driving. (*Id.* at pp. 349–350 ["the number of times the act is committed determines the number of times the statute is violated"].) The actus reus or gravamen of the section 69 offenses at issue here is the use of force or violence to resist an officer. The applicable facts show that Orduno committed the act prohibited by section 69 numerous times in the course of the backyard incident. For example, Orduno struggled mightily against Officer Brewer and prevented him from placing his right arm in a control hold. He was also able to pull his left arm violently out of Officer Glenn's grasp. In addition, he hurled both Officers Glenn and Moore off his back as they attempted to force him, face down, to the ground. Since he committed the act prohibited by section 69 multiple times, he may properly be convicted of multiple violations of the statute.

Orduno does not cite any applicable authority for his assertion that section 69 precludes multiple convictions in this instance. Rather, he asserts that his convictions must be consolidated because section 69 does not *expressly* permit multiple convictions based on a single, underlying incident. He contrasts section 69 with section 148, which makes it a misdemeanor to resist, delay, or obstruct a

peace officer, with particular reference to section 148's proviso that "[a] person may be convicted of multiple violations of this section if more than one public officer, peace officer, or emergency medical technician are victims." (§ 148, subds.(a)(1), (e).) Orduno's reliance on section 148 is misplaced because the language of section 69 is not ambiguous, and it is not necessary to compare its terms to those of other statutes for purposes of determining its application and scope. (*People v. Arias* (2008) 45 Cal.4th 169, 177.)

We find no error with respect to Orduno's convictions under section 69.

Orduno, 2015 WL 8053240, at *2–4.

The petition does not allege any violation of federal law. Whether under California Penal Code section 69, Petitioner should have been convicted of one count rather than three counts of resisting an executive officer is an issue of state law that is not cognizable in federal habeas. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (*per curiam*) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

To the extent Petitioner challenges his convictions because "not once did [he] resist," (ECF No. 1 at 3), this claim is unexhausted. (LD 18). If a petitioner has not sought relief in the highest state court for a claim raised in a federal petition, the Court cannot proceed to the merits of that claim. 28 U.S.C. § 2254(b)(1). However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of

evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 566 U.S. 650, 655 (2012) (quoting Jackson, 443 U.S. at 319).

At trial, multiple prosecution witnesses provided consistent testimony that Petitioner resisted and struggled against officers as they attempted to handcuff him. (6 RT[5] 871–74, 918–22, 935–38). During cross-examination, the defense case-in-chief, and closing argument, Petitioner did not offer any contradicting evidence or even a different account of Petitioner's actions when officers attempted to handcuff him. (6 RT 876–80, 923–25; 7 RT 948–50, 963–969; 8 RT 1218). As it is perfectly clear Petitioner does not raise even a colorable sufficiency of evidence claim, the Court finds that Petitioner is not entitled to habeas relief on this ground.

### C. Certificate of Appealability

Having found that Petitioner is not entitled to habeas relief, the Court now turns to the question of whether a certificate of appealability should issue. See Rule 11, Rules Governing Section 2254 Cases. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.

---

[5] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on January 17, 2017. (ECF No. 14).

    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

    (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner's federal habeas corpus petition should be denied debatable or wrong, or that the issues presented are deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

## IV.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is DENIED;

2. The Clerk of Court is directed to CLOSE the case; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **April 6, 2017**         /s/ Erica P. Grosjean
                     UNITED STATES MAGISTRATE JUDGE